GEORGE TURESS v. THE NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY.

1. A railroad company which maintains a turntable upon its own land is not liable for an injury to a child who comes upon the land and receives the injury by playing with the turntable without any invitation, express or implied.
2. An invitation to a child will not be implied from the fact that the turntable, obviously designed for another purpose, furnishes a place for play which is attractive to children.

On error to the Passaic Circuit Court.

The judgment brought up for review was entered in favor of the defendant upon a demurrer to the plaintiff's declaration, the ground of decision being that no actionable wrong on the part of the defendant was disclosed thereby.

The allegation of the declaration, in substance, is that the defendant company was the owner and operator of a railroad running through the city of Paterson, and that in connection therewith it operated and controlled a turntable on its land abutting on the south side of Ellison street, distant about one hundred feet from the main tracks of the railway; that said Ellison street is a public highway in the residential portion of the city of Paterson aforesaid, and is daily passed over by large numbers of people, men, women and children, who have a full and uninterrupted view of the said turntable as they pass along said street; that said turntable, which is about fifty feet long and eight feet wide, extends in a northerly and southerly direction, and is so situated on the land aforesaid that the northerly end of its stationary abutment (which stationary abutment is about ten feet long) is about five feet from the southerly line of said Ellison street; that said turntable is very dangerous for children to play with, but is, nevertheless, a device, in its nature, exceedingly attractive and alluring to children and apt and likely to cause them to use it and turn it for their amusement and sport, and in consequence of their so using and turning it to hurt and injure themselves; that the only way in which the turntable could be safely and carefully maintained by the defendant was by surrounding it with a fence and keeping it locked to prevent the approach of children to it and to prevent them from using it; that it was the duty of the defendant to use care, prudence and precaution that children should not be injured thereby, and to that end to prevent approach and access to the turntable by fencing it around and by securing it with a lock, so that it could not be turned by children who might resort to it; that the defendant, disregarding its duty in that behalf, failed to use reasonable care, prudence and precaution, but carelessly and negligently maintained and controlled the turn-

table without any fence around it to prevent the access of children to it, and without keeping it locked.

The declaration then avers that, by means of the premises and in consequence of said neglect and carelessness of the defendant, the plaintiff, an infant of the age of ten years and nine months, being attracted and allured by the turntable to play with the same and to put the same in motion, did so; and while it was in motion, it having been moved by himself and his playmates, the plaintiff climbed on the end of it, resting on his belly, and was thereby, in the turning of the table, caught between it and the stationary abutment and seriously injured.

Argued at February Term, 1898, before MAGIE, CHIEF JUSTICE, and Justices LIPPINCOTT, GUMMERE and LUDLOW.

For the plaintiff in error, *William I. Lewis.*

For the defendant in error, *John W. Griggs.*

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.   The ground upon which the alleged duty of the defendant company is rested involves the doctrine of the cases which have come to be called " Turntable cases."   The first case of importance in this country upon that subject is *Railroad Company* v. *Stout,* 17 *Wall.* 657. That case has been followed more or less closely in a great number of cases which may be found collected in 27 *Am. & Eng. Encycl. L.* 344.   While the doctrine of the United States Supreme Court, in the case cited, has been adopted by many courts, it has, as we shall see, the dissent and disapprobation of other courts.   It is now for the first time presented for consideration to the courts of this state.

The rule of duty involved in the doctrine under consideration may be thus generally stated : that a railroad company which maintains on its own ground a turntable, which from its attractiveness to the eyes of children, or from its being

adapted by its construction to provide for children an attractive thing to play upon, is bound to take reasonable care that they be not injured thereby. Sometimes emphasis has been laid upon the fact that the turntable is maintained near public streets and places, or where people and children are accustomed to visit or pass through, as in *Ferguson* v. *Columbus, &c., Railway Co.*, 75 *Ga.* 637. Sometimes it is stated more broadly, as by Mr. Justice Young, in *Keffe* v. *Milwaukee, &c., Railway Co.*, 21 *Minn.* 207, where he says that a railroad company, when it sets before young children a temptation which it has reason to believe will lead them into danger, must use ordinary care to protect them from harm.

It is nowhere pretended that the rule applies in the case of adults, who under similar circumstances would undoubtedly be trespassers, to whom the railroad company would owe no duty, or at most would be admitted by license or permission, and to them the railroad company would owe no duty but to abstain from willful injuries, and from maintaining hidden and concealed dangers. But the expressed notion is that, under such circumstances, young children are not trespassers because allured and tempted to come upon the land of another, and not being of sufficient age to appreciate the dangers consequent on yielding to such temptation.

It is obvious that the principle on which the rule rests, it] sound, must be applicable more widely than merely to railroad companies and the turntables maintained by them. It would require a similar rule to be applied to all owners and occupiers of land in respect to any structure, machinery or implement, maintained by them thereon, which possesses a like attractiveness and furnishes a like temptation to young children. He who erects a tower capable of being climbed, and maintains thereon a windmill to pump water to his buildings; he who leaves his mowing machine or dangerous agricultural implements in his field after his day's work; he who maintains a pond in which boys may swim in summer or on which they may skate in winter, would seem to be amenable to this rule of duty. Climbing, playing at work, swimming and skating

are attractions almost irresistible to children, and any land-owner or occupier may well believe that such attractions will lead young children into danger. Many other cases of like character might be imagined. In all of them the doctrine of the turntable cases, if correct, would charge the landowner, or occupier, with the duty of taking ordinary care to preserve young children thus tempted on his land from harm. The fact that the doctrine extends to such a variety of cases, and to cases in respect to which the idea of such a duty is novel and startling, raises a strong suspicion of the correctness of the doctrine, and leads us to question it.

The only ground upon which this doctrine can be supported, if at all, is that he who maintains on his land a thing having the attractiveness mentioned, is assumed thereby to invite upon his lands children of tender age to whom this attractiveness has proved a temptation too strong to resist, and to know what the conduct of children thus invited would probably be. The duty must arise, in my judgment, from this implied invitation. I use the word " invitation " as aptly expressing a well-known relation between an owner or occupier of land and one who comes thereon under certain circumstances. The nature and extent of the liability of the inviter are well settled. *Phillips* v. *Library Company*, 26 *Vroom* 307. Mr. Justice Depue, in the case last cited, draws attention to a criticism of the Master of the Rolls in *Heaven* v. *Pender*, 11 *Q. B. D.* 508, on the accuracy of the word " invitation," as commonly used in this connection. But the statement which the learned Master of the Rolls suggested as more accurately expressing the relation between the parties in such cases, seems to be unnecessarily and erroneously broad. Invitation is a term whose legal import is known, and there is no reason for not using it to express the relation now under consideration.

Invitation which creates such a relation may be express, as when the owner or occupier of land, by words, invites another to come on it or make use of it or something thereon ; or it may be implied, as when such owner or occupier, by acts

or conduct, leads another to believe that the land or something thereon was intended to be used as he uses them, and that such use is not only acquiesced in by the owner or occupier, but is in accordance with the intention or design for which the way or place or thing was adapted and prepared or allowed to be used. This definition, originally given in *Sweeny* v. *Old Colony Railroad Co.*, 10 *Allen* 368, was approved and adopted by our Court of Errors. *Phillips* v. *Library Company, ubi supra.*

It will be observed that, in the case of an implied invitation, the relation is imposed upon the owner or occupier of land only when he has done something which justifies one who enters upon the land and makes use of it or something upon it in believing that he intended such use to be made; and he who makes such use can claim the relation only when he is justified by the acts or conduct of the owner or occupier in believing that such use was intended. And entry and use by such invitation are thus distinguished from entry and use by mere permission.

Applying these views to the turntable cases, it is obvious that the relation between a railroad company and a child who enters its land to play with a turntable is not one created by implied invitation. A turntable, however attractive, could not be deemed to have been erected for the use which the child makes of it. This objection is not obviated by an appeal to the doctrine that children of tender years are not held to the same degree of prudence and care as adults, but only to such prudence and care as their years indicate them to possess, for it is not a question of the child's negligence, but a question of the duty of the railroad company towards the child. If that duty is conceived to arise from the relation created by implied invitation, it must appear that the child is justified in believing that the turntable was designed for the use he makes of it, which is, of course, absurd.

In my judgment, it follows that the liability of a railroad company to a child injured by playing on its turntable cannot

arise out of a duty imposed on the company by reason of a supposed implied invitation.

If a child is not to be deemed invited to enter a railroad company's land to play upon a turntable, it also follows that a child in doing so is either a trespasser or is there by mere permission. In neither case is any duty cast upon the landowner, except to abstain from willful injury, and from maintaining hidden or concealed dangers.

As has been before stated, the doctrine of the Supreme Court of the United States in Railroad Company v. Stout, has not met with universal approval. In New York, at an early day, the Court of Appeals intimated that it could not be supported. *McAlpin* v. *Powell,* 70 *N. Y.* 126. Later cases in the Supreme Court, however, yielded to the prevailing opinions. *Walsh* v. *Fitchburg Railroad Co.,* 67 *Hun* 604; *Walsh* v. *Fitchburg, &c.,* 78 *Id.* 1. But, upon an appeal of the case last cited, the Court of Appeals, in a strong opinion by Judge Peckham, unanimously disapproved of the doctrine. *Walsh* v. *Fitchburg Railroad Co.,* 145 *N. Y.* 301. In that case a child under six years of age was injured while playing on a turntable erected on a plot of ground partially unfenced, and across which the public had been permitted to go from one street to another. It was held that the facts did not justify the inference of an invitation to the child ; that his presence there was by sufferance only, which did not cast upon the company any duty of active vigilance, and that the company owed no duty to the child to keep the turntable fastened.

In Massachusetts the courts take a similar view. A boy was attracted to railroad premises by an unlocked and unguarded turntable, near a highway and also near the accustomed resorts of children, and was injured by playing with it. Mr. Justice Lathrop reviewed the decisions with care, and the court reached the conclusion that, upon such facts, no invitation from the company was to be inferred, but that the boy was a mere trespasser, to whom the company owed no duty which was violated. *Daniels* v. *New York, &c., Railroad Co.,* 154 *Mass.* 349. A similar doctrine had been enunciated

in other cases in that state where children were injured upon railroad property. *McEachern* v. *Boston, &c., Railroad Co.,* 150 *Mass.* 515, and cases cited.

In a case in New Hampshire, a boy of seven years of age was injured while playing upon a turntable erected and maintained within sixty feet of a public street. He had been attracted to it by the noise of older boys playing upon it. The court repudiated the doctrine of Railroad Company v. Stout, and held that, under the circumstances, the railroad owed no duty to the boy. *Frost* v. *Eastern Railroad Co.,* 64 *N. H.* 220.

These cases support the view previously expressed, and I think we should follow them as true expressions of the law on this subject. The principle which I maintain was, in my judgment, involved in a case decided in this court. I refer to *Vanderbeck* v. *Hendry,* 5 *Vroom* 467. In that case children of tender years, out of childish curiosity, wandered through open gates into a lumber yard, and were there injured by the fall of a pile of lumber, which, it was claimed, was improperly secured. The lumber yard was adapted to excite the curiosity of children, for it was built over the water and was intersected by narrow gangways bounded by high piles of lumber and leading to the water. It was attractive to children, and, as it was in a populous district, its owner might fairly anticipate that, if the gates were left open, children would yield to its attractions. Yet this court held that, under such circumstances, the owner of the lumber yard owed no duty to care for the safety of the children who were trespassers or had entered by mere permission.

It results that the declaration demurred to discloses the existence of no duty owing by the defendant company to the plaintiff, the neglect of which caused the injury for which he sues, and that, therefore, the judgment of the Circuit Court should be affirmed, with costs.

LUDLOW, J., dissents.