## ROBERT SUTTON, ADMINISTRATOR, v. WEST JERSEY AND SEASHORE RAILROAD COMPANY.

Submitted March 19, 1909—Decided June 14, 1909.

1. As a general rule, a landowner who, in the development of his property, and solely for the purpose of obtaining a more beneficial user therefrom, installs upon it an appliance which will be dangerous to people coming in contact therewith, is under no obligation to trespassers to so guard it that they shall not be injured thereby, and is not liable to them for injuries received therefrom; but where he installs the appliance for the purpose of inflicting injury upon the persons or property of those who unlawfully come upon his land, he is answerable when harm is inflicted upon them by such appliance.

2. *Quære.* Does this rule apply to the case of a landowner who permits an unguarded excavation to be upon his land, so near to a public highway as to endanger those who pass along the highway in the exercise of ordinary caution, and exempt him from liability to a person who, without negligence, unintentionally leaves the highway and falls into the excavation?

On demurrer to declaration.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and PARKER.

For the plaintiff, *Clarence Pettit.*

For the defendant, *Bourgeois & Sooy.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action is brought by the administrator of Joseph Sutton, deceased, to recover the pecuniary loss sustained by his next of kin by reason of his death, the suit being based upon the theory that decedent's death was caused by the wrongful act or neglect of the defendant.

The declaration, in substance, avers that the defendant maintains and operates an electric railroad to Atlantic City;

that the electric current employed in the operation of the road is conducted and conveyed by means of a third rail, which is at all times charged with electricity; that this rail is at all times uncovered and exposed, and that no protection whatever from the electrical current is furnished to objects coming in contact therewith; that the defendant's railroad crosses a large area of meadow land which is frequented and traversed by many persons engaged in hunting, fishing and divers other pursuits; that at the time of decedent's death there were no signs, warnings, signals, fences or other devices to give notice of the dangerous character and condition of the railroad; that the decedent, a lad of thirteen years of age, while traversing this meadow land, came in contact with the third rail by stepping thereon while attempting to cross the railroad near its intersection with the old meadow turnpike, and that by the contact he was immediately killed.

The defendant, by its demurrer, asserts that the facts above recited do not exhibit any legal liability resting on it for young Sutton's death.

The averment of the declaration that the decedent met his death in attempting to cross the right of way of the defendant's railroad while traversing the meadows through which it ran, is not accompanied with any allegation that he had a legal right to go upon the defendant's land. The absence of any such allegation is important, for, by force of the elementary rule that each party's pleading is to be taken most strongly against himself, and most favorably to his adversary, it raises the presumption that in doing so he was an intentional trespasser. *Mathews* v. *Bensel, 22 Vroom* 30; *Taylor* v. *Haddonfield, 36 Id.* 102. The right of the plaintiff, therefore, depends upon whether the defendant company owes to a trespasser upon its right of way the duty of using care either to safeguard its third rail in such a way as to prevent him from coming in contact with it, or else of giving him notice that such contact is dangerous to life and limb. The rule is settled in this state that a landowner is under no obligation to a trespasser to keep his premises in a non-hazardous state; that, as to him, the landowner's sole duty is to

abstain from acts willfully injurious. And this rule is applicable whether the trespasser is an infant or an· adult. *Delaware, Lackawanna and Western Railroad Co.* v. *Reich,* 32 *Id.* 635, and cases cited. But it is contended that this rule is not universal in its application; that it does not apply where the danger is not only latent, but of so high a degree as to threaten the life of the trespasser; and cases like that of *Townsend* v. *Wathen,* 9 *East* 277, where the plaintiff's dogs were caught and killed in traps set by the defendant upon his premises, and baited by him for the purpose of enticing his neighbor's dogs to the traps, and *Bird* v. *Holbrook,* 4 *Bing.* 628, where the plaintiff was injured while trespassing upon the defendant's land by the discharge of a spring gun set by the defendant to protect his flower roots from the depredation of thieves, are cited in support of this contention. I do not think that any such exception as that suggested exists. In the Reich case, and, indeed, in most of the cases where this question has received consideration, the danger was latent, so far as the plaintiff was concerned. It must, therefore, be considered as settled that the latency of the danger imposes no obligation upon the landowner. Nor can I see upon what ground the extent of the danger to be apprehended can be made the basis of differentiation. Where is the line to be drawn? Can it be said that when the hazard is so extreme as to threaten life the landowner owes to a trespasser the duty of protection, but that when it only threatens bodily harm, more or less serious in character, he owes no such duty? Or that he is exempt from the duty of protection only when the amount of injury to be apprehended is slight? Not only am I unable to perceive any reason for such a distinction, but I do not find any suggestion of it in the reported cases. Decisions like Townsend *v.* Wathen, and Bird *v.* Holbrook, instead of being exceptions to the rule, are within it; for the rule does not exempt a landowner from liability to a trespasser for acts which are willfully injurious, but, on the contrary, affirms that liability, and recognizes the soundness of the view expressed in the line of cases just re-

ferred to. In the Townsend case the defendant enticed the dogs of the plaintiff upon his land for the purpose of destroying them. His act in enticing the dogs upon his premises was intentional, *i. e.,* willful. His destruction of them was also intentional; as much so as if he had shot or clubbed the dogs to death. What he did was absolutely illegal from beginning to end. In Bird *v.* Holbrook the purpose of the defendant to shoot any person who should come upon his land to steal his flower roots was unlawful, and his act in attempting to carry out that purpose was willfully injurious. The real distinction running through the cases seems to me to be this: Where the landowner in the development of his property, and solely for the purpose of obtaining a more beneficial user therefrom, installs upon it an appliance which will be dangerous to people coming in contact with it, he is under no obligation to trespassers to so guard it that they shall not be injured; but where he installs the appliance for the purpose of inflicting injury upon the persons or property of those who unlawfully come upon his land, he is liable when harm is inflicted by such appliance. Cases like Delaware, Lackawanna and Western Railroad Co. *v.* Reich come within the first class; cases like Townsend *v.* Wathen and Bird *v.* Holbrook come within the second. In the case in hand the defendant installed the electric third rail system for the more complete beneficial user of its property. In doing so it acted under legislative sanction. It was originally chartered as a steam railroad in 1853, and by the revision of the act concerning railroads in 1903, the power was conferred upon it to substitute for steam *any* other motive power which it might deem best adapted to the economical operation of its railroad, and to use such devices and appliances for conducting and distributing power as might be required. *Pamph. L.* 1903, *p.* 658, § 24. Having the lawful right to install this system for the operation of its road it was within the protection of the rule which we have been discussing, and was under no obligation to the deceased except to abstain from acts willfully injurious to him. That it failed in this obligation is not suggested in the declaration.

This discussion would not be complete without a reference to a line of cases mentioned in the brief of counsel, which, it must be admitted, constitute an exception to the rule which we have had under consideration. We refer to those cases which hold that a landowner who permits an unguarded excavation to be upon his land so near to a public highway as to endanger those who pass along the highway in the exercise of ordinary caution, is liable for injuries received by a traveler on the highway therefrom. The existence of such liability, although recognized by the decisions of other courts, has not yet been declared by our court of last resort. It was, however, assumed by that court to exist in the case of *Daneck* v. *Pennsylvania Railroad Co.*, 30 *Vroom* 415, for the purpose of disposing of the matter then before it. It is to be gathered from the opinion in that case that the court held the view that, even if the liability existed, it was limited in extent, and could only be invoked by a person traveling on the highway who left it unintentionally, and so was injured, and not then unless the excavation was so near to the highway as to be a threatened danger to those of the public who were using the way. The present case does not come within the excepted class. In the first place, as has already been pointed out, the conclusion to be drawn from the averments of the declaration is that the decedent, when he came in contact with the electrified rail of the defendant's railroad was an intentional trespasser upon its property. In the second place, the accident did not occur while the decedent was traveling along the public highway, but while he was traversing the meadows through which the defendant's railroad ran; and, in the third place, the scene of the accident was not adjacent to a public highway.

The conclusion reached by us is that the defendant is entitled to judgment on the demurrer.