### McGILL et al. v. UNITED STATES.
### No. 10839.

United States Court of Appeals
Third Circuit.

Argued Dec. 18, 1952.

Decided Jan. 7, 1953.

Joseph S. Lord, 3d, Philadelphia, Pa. (Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellant.

Ralph R. Curry, New York City, Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the liability of the United States under the Tort Claims Act [1] for an injury to a child trespasser. The ac-

1. 28 U.S.C. §§ 2671–2680.

cident occurred in· New Jersey and that state's law controls. The trial court concluded that under the New Jersey rule the plaintiff could not recover and therefore awarded judgment for the defendant, although he assessed the damages.

The facts are undisputed. There is no complaint about the amount of damage the trial court found if anything is to be recovered at all. The injured plaintiff fell from a tower on land owned by the borough of Avalon, New Jersey. The borough had granted permission to the United States Coast Guard to build a tower. The tower was erected on the beach immediately adjacent to the boardwalk and was easily accessible from it. In June of 1946 the Coast Guard ceased to use the tower. A chain was put around it and a "no trespassing" sign put up. But both chain and sign disappeared within a short time. Children played about the tower. The court found that "the evidence disclosed that this was an open and notorious use by children, particularly in the summer months." He did not find that actual notice was given to the Coast Guard that children played in the tower but concluded that "The use of the tower as a playground was so open and notorious that the United States Government should have had notice of the fact of its use in that respect."[2]

The plaintiff in this case was, at the time of the accident, seven years old. With other children he climbed the tower on an August day. Plaintiff fell as he attempted to get through a manhole to some auxiliary steps on the tower. It is for the injuries sustained in this fall that the action is brought.

The plaintiff's counsel conceded at the oral argument of this case that under the New Jersey decisions prior to the Strang case, which will be discussed presently,

there would be no chance for the plaintiff to recover. This concession was correct.[3]

We turn, then, to Strang v. South Jersey Broadcasting Co., 10 N.J.Super. 486, 77 A.2d 502, decided by the Superior Court of New Jersey, Appellate Division, December, 1950. This case involved the liability of a landowner for injury to a neighborhood boy who had come on his premises and was injured by falling into a fire which the company's janitor had built on the land near the broadcasting station. The court held that the question of the defendant's negligence was properly submitted to a jury and upheld a judgment for the plaintiff. The case was taken to the Supreme Court of New Jersey and on March 3, 1952, was affirmed by that court, 9 N.J. 38, 86 A.2d 777. We may admit that the facts in the New Jersey case are distinguishable from' those presented here. The thing that hurt Edward Strang was not the neglect to keep premises in repair but the creation of an active and dangerous force, at least dangerous to a small boy, in this unguarded fire. And if one were inclined to whittle down the effect of a decision this one might be pigeonholed on that basis.

But the New Jersey court did not put the plaintiff's recovery on any narrow ground. In the appellate division the opinion-writing judge, in talking about children who come on to the land of another without being asked there by the owner, said: "But if habitually they do come to play upon his land and the landowner has notice of the fact, then he owes to them a duty which, perhaps, may be regarded as an extension of the old obligation to refrain from intentional injury."[4] It is to be noted that the opinion writer is conscious of the fact that the old obligation is being extended.

More important, the court went on to say: "The New Jersey rule seems to be in

2. The district court's opinion is reported in D.C.E.D.Pa.1952, 105 F.Supp. 719, 720.

3. The "attractive nuisance" doctrine has been rejected by New Jersey courts. Turess v. New York, S. & W. R. Co., 1898, 61 N.J.L. 314, 40 A. 614; Delaware, L. & W. R. Co. v. Reich, 1898, 61 N.J.L. 635, 40 A. 682, 41 L.R.A. 831; Friedman v. Snare & Triest Co., 1905, 71 N.J.L. 605, 61 A. 401, 70 L.R.A. 147; Sutton v. West Jersey and S. R. Co., 1909, 78 N.J.L. 17, 73 A. 256; Kaproli v. Central R. of New Jersey, 1928, 105 N.J.L. 225, 143 A. 343, 60 A.L.R. 1430; Meade v. Purity Bakeries. Corp., 1935, 115 N.J.L. 471, 180 A. 856.

4. 77 A.2d 502 at page 504.

substantial accord with the Restatement, Torts, § 339." Then the court quoted the blackletter statement of § 339 in its entirety. We do the same. The statement is:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

In the Supreme Court of New Jersey this same § 339 again played what we think is a leading part in the opinion of Mr. Justice Heher. "Where trespass upon the land is foreseeable, and the condition involves an unreasonable risk of death or serious bodily injury to the trespassing child, the possessor of the land is liable. Restatement of Torts, section 339. Habitual acquiescence in trespasses may well constitute license."[5]

The court went on to say, after noting that the presence of the child should have been anticipated, "The basis of liability is the foreseeability of harm, and the measure of duty is care in proportion to the foreseeable risk." The opinion speaks of the accommodation of the landowner's right to the use of his land and "society's interest in the humane and the protection of the life and limb of its youth and the individual's interest in personal security. * * * Human safety is of far greater concern

than unrestricted freedom in the use of land." Again, Restatement, Torts, § 339 is cited.

We think these two opinions mark a real development in the law of a state noted for its high quality of judicial thinking. The court is carefully building upon what has gone before in New Jersey judicial history but at the same time is giving it a direction based, not on an arbitrary use of a catch phrase, but on a thoughtful analysis of principles underlying the sound development of tort law. We think it is fair to say from the discussion of the Strang case in both the Appellate Division and the Supreme Court that § 339 of the Restatement of Torts represents the New Jersey point of view. It also represents the point of view shown in well considered opinions of courts in other parts of the country. See Prosser on Torts, page 620. The Restatement did not make this view of the law but perhaps has helped in its development by enunciating and clarifying what was already going on.

As applied to this case, the application of § 339 seems to be clear. The trial judge found as a conclusion of law that the defendant was not negligent. This was a perfectly proper finding on his view of what the New Jersey law required. If no duty of care there can of course be no negligence. He commented that this was a perfect case for the application of the so-called "attractive nuisance" doctrine but did not find that this doctrine was the law of New Jersey. On his premise his conclusion must have followed. We are not talking about the "attractive nuisance" doctrine, a catch phrase that has made all sorts of difficulty and explained nothing. See Prosser on Torts, page 618. We put the case on the basis of the law shown in § 339 above quoted. The risk here was great. The precaution taken to prevent recovery would have been very slight. In fact, we were advised at the argument of this case that the tower had been taken down, removed and set up elsewhere. Since under the Tort Claims Act the United States is responsible in the same way an individual would be,

5. 86 A.2d 777 at page 780.

there seems to us no doubt about the liability.

The judgment will be reversed and the case remanded to the district court with directions to enter judgment for the plaintiff.